IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


TERRANCE D. GOODMAN,
      Petitioner,

vs.                                  Case No. 3:07cv207/LAC/EMT

JAMES R. McDONOUGH,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      Now pending is Respondent's motion to dismiss (Doc. 14) the instant petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondent seeks dismissal of the petition on the basis that it was untimely filed pursuant to 28 U.S.C. § 2244(d).  Although Petitioner was provided an opportunity to respond to the motion (*see* Doc. 15), he declined to do so.

      This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

      The procedural background of this case is established by the state court record (Doc. 14, Exhibits).  On March 10, 1997, an indictment was filed in the Okaloosa County Circuit Court charging Petitioner with one count of First Degree Murder with a Firearm in violation of Florida Statutes section 782.04, one count of Felony Causing Bodily Injury in violation of section 782.051(1), and one count of Shooting into a Building in violation of section 790.19 (*id.*, Ex. A). Pursuant to a written plea agreement, Petitioner pleaded nolo contendere to Third Degree Murder with a Firearm (a second degree felony), Felony Causing Bodily Injury (a first degree felony punishable by life), and Shooting into a Building (a second degree felony with a mandatory minimum sentence of three years) (Doc. 14, Ex. B).  In the plea agreement, Petitioner agreed that the following facts provided a factual basis for the charges:  Petitioner went to the victim's house to obtain reimbursement for a small amount of drugs; a fight broke out between the victim and co-

defendant Brandon Dawson, who shot the victim; Petitioner shot and wounded another man when he (Petitioner) was fleeing the scene (*id.*).  The agreement further provided that the maximum period of imprisonment Petitioner could receive was life imprisonment for the Felony Causing Bodily Injury count and fifteen years on each of the other two counts, with a three-year mandatory minimum on those two counts (*id.*); however, the parties agreed to a downward departure on Petitioner's guideline sentence such that Petitioner would be sentenced to concurrent fifteen-year sentences on each count, followed by three years of probation, with credit for time served, and Petitioner would testify truthfully against Lamar Brooks and Brandon Dawson (*id.*).  On April 9, 1998, the trial court rendered judgment adjudicating Petitioner guilty of the crimes and sentencing him in accordance with the written plea agreement (Doc. 14, Ex. C).  Petitioner did not directly appeal the judgment of conviction and sentence (*see* Doc. 1 at 2).

On August 23, 1999, Petitioner filed a motion for postconviction relief in the trial court pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 14, Ex. D at 1–9).  In that motion, Petitioner raised the claims that he asserts as Ground One, Ground Two (B), Ground Two (C), Ground Two (E), and Ground Three in the instant federal petition (*id.*; Doc. 1 at 8, 8A–8C, 9, supporting memorandum at 6–11, 15–19).  On September 21, 1999, the trial court issued an order summarily denying Petitioner's Rule 3.850 motion (Doc. 14 at 12–29).  Petitioner appealed the decision to the Florida First District Court of Appeal (First DCA), but the appellate court affirmed per curiam without written opinion on May 4, 2000, with the mandate issuing May 31, 2000 (Doc. 14, Exs. G, H).  <u>Goodman v. State</u>, 766 So. 2d 1047 (Fla. 1st DCA May 4, 2000) (Table).

On March 13, 2001, Petitioner filed a second Rule 3.850 motion (*see* Doc. 1 at 4; Doc. 14, Ex. I at 1–6).  In that motion, Petitioner raised the claim that he asserts as Ground 2(A) in the instant federal petition (Doc. 14, Ex. I at 1–6; Doc. 1 at 8, 8A, supporting memorandum at 12–15).  On March 22, 2001, the trial court issued an order summarily denying Petitioner's motion (Doc. 14, Ex. I at 9–27).  Petitioner appealed the decision to the First DCA, but the appellate court affirmed per curium on August 10, 2001, with the mandate issuing October 2, 2001 (Doc. 14, Exs. K, L).  <u>Goodman v. State</u>, 793 So. 2d 1085 (Fla. 1st DCA 2001).

On July 10, 2002, Petitioner filed a third Rule 3.850 motion (Doc. 14, Ex. M at 1–10).  In that motion, Petitioner raised the claim that he asserts as Ground 2(D) in the instant federal petition (*id.*; Doc. 1 at 8B, supporting memorandum at 16–17).  On August 6, 2002, the trial court issued an order summarily denying Petitioner's motion (Doc. 14, Ex. M at 16–17).  Petitioner appealed the decision to the First DCA.  In an opinion filed May 6, 2003, the First DCA reversed the trial court's decision and remanded the case with instructions to the trial court to either refute Petitioner's claim with record attachments or hold an evidentiary hearing (Doc. 14, Ex. R).  <u>Goodman v. State</u>, 845 So.

2d 253 (Fla. 1st DCA 2003). The trial court held an evidentiary hearing and subsequently issued an order denying relief (Doc. 14, Ex. T). Petitioner appealed the decision to the First DCA, but the appellate court affirmed per curiam without written opinion on April 28, 2006, with the mandate issuing May 24, 2006 (*see* Doc. 1 at 7; Doc. 14, Exs. Y, Z). <u>Goodman v. State</u>, 928 So. 2d 340 (Fla. 1st DCA Apr. 26, 2006) (Table).

On May 16, 2007, Petitioner filed the instant federal habeas petition (Doc. 1 at 10).

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Petitioner has not asserted that a government-created impediment to his filing existed, or that any of his claims are based on a right newly recognized by the Supreme Court; however, it appears that the factual predicate for Ground Two (D) could not have been discovered prior to May 24 , 2002 (Doc. 1 at 8B, supporting memorandum at 16–17; Doc. 14, Ex. M at 3–5, 7–10). Petitioner asserts that on that date, he obtained an affidavit from Terrance McCrary, who stated he was an eyewitness to the events underlying Petitioner's conviction, and Petitioner did not shoot the victim, Barron Demons (*id.*). Therefore, if § 2244(d)(1)(D) is used as the trigger for the one-year limitations period, the limitations period would have commenced on May 24, 2002.

The next issue is whether May 24, 2002 is later than the date Petitioner's conviction became final. It is now well established that when a Florida defendant does not directly appeal his conviction, the conviction becomes final thirty (30) days after rendition of the order of judgment of conviction and sentence. *See* Fla. R. App. P. 9.110(b); <u>Gust v. State</u>, 535 So. 2d 642 (Fla. 1st DCA 1988 (if defendant does not appeal conviction or sentence, judgment of conviction and sentence

become final when 30-day period for filing appeal expires).  In the instant case, the Escambia Circuit Court rendered its judgment on April 9, 1998 (Doc. 14, Ex. C at 203).  *See* Fla. R. App. P. 9.020(h) (order is "rendered" when signed, written order is filed with clerk of lower tribunal).  Therefore, Petitioner's conviction became final on May 9, 1998.  Because the trigger date for the limitations period is later under § 2244(d)(1)(D) than § 2244(d)(1)(A), the undersigned concludes that § 2244(d)(1)(D) applies in determining when the limitations period began to run.  Under this statutory trigger, the limitations period began to run on May 24, 2002, upon Petitioner's discovery of Terrance McCrary's eyewitness account, and it expired on May 24, 2003.

Even though Petitioner did not file his federal petition on or before May 24, 2003, he may be entitled to review of his petition if the limitations period was tolled pursuant to statutory tolling principles.  Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the record shows that on July 10, 2002, forty-six (46) days after the federal limitations period commenced, Petitioner filed his third Rule 3.850 motion, in which he challenged his plea on the ground that defense counsel should have discovered Mr. McCrary's testimony, and if he had, Petitioner would not have entered a plea (Doc. 14, Ex. M at 1–10).  This post-conviction motion was pending until May 24, 2006, upon issuance of the First DCA's mandate affirming the trial court's decision.  The federal limitations period then ran 356 days until May 16, 2007, when Petitioner filed the instant federal petition.  Because Petitioner filed his federal petition thirty-seven (37) days after the limitations period expired, the instant petition is untimely.

Petitioner does not allege grounds for equitable tolling; however, the court liberally construes his petition and supporting memorandum as asserting that he is actually innocent of the crimes.  In Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d (1995), the Supreme Court set forth the standard of proof governing a habeas petitioner's procedural claim of actual innocence:  the petitioner must show that constitutional error "probably resulted" in the conviction of one who is actually innocent.  *Id.*, 513 U.S. at 324, 326–27.  A mere allegation of innocence is not enough:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup, 513 U.S. at 324.

The Schlup Court went on to make several observations about this standard.  With respect to the term "probably resulted," the Court clarified that, "[t]o establish the requisite probability, the

petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*, 513 U.S. at 327, 330 (emphasis added).  With respect to the term "reasonable juror," the Court instructed:  "It must be presumed that a reasonable juror would consider fairly all of the evidence presented.  It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.*, 513 U.S. at 329.  In assessing the adequacy of Petitioner's showing, the district court "is not bound by the rules of admissibility that would govern at trial." *Id.* Instead, the court is allowed also to consider "the probative force of relevant evidence . . . 'including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 328 (emphasis added) (quoting Friendly, Is Innocence Irrelevant?  Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)).

It is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency.  *See* <u>Bousley v. United States</u>, 523 U.S. 614, 623–24, 118 S. Ct. 1604, 1611–12, 140 L. Ed. 2d 828 (1998) (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518–19, 120 L. Ed. 2d 269 (1992)).  "[T]he district court should heed the Supreme Court's instruction that "[i]n cases where the State had forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." <u>United States v. Montano</u>, 398 F.3d 1276, 1285 (11th Cir. 2005) (quoting <u>Bousley</u>, 523 U.S. at 624).

Here, Petitioner pleaded guilty to third degree murder with a firearm, felony causing bodily injury, and shooting into a building.  To prove the crime of second degree murder, a charge more serious than the charge Petitioner pleaded to, the evidence must show the following elements beyond a reasonable doubt:  (1) Mr. Demons is dead, (2) the death occurred during the perpetration of, or in the attempt to perpetrate an enumerated felony, such as robbery (defined as the taking of money from the person or custody of another with the intent to permanently or temporarily deprive the victim of the money, and in the course of the taking, force, violence, assault, or putting in fear was used, *see* Florida Statutes section 812.13 (1996)), and (3) Mr. Demons was killed by a person other than Petitioner; but both Petitioner and co-defendant Dawson were principals in the perpetration of the enumerated felony.  *See* Fla. Stat. § 782.04(3) (1996).  To prove the crime of felony causing bodily injury, the State must prove the following two elements beyond a reasonable doubt:  (1) Petitioner perpetrated or attempted to perpetrate a felony enumerated in section 782.04(3) (*see supra*), and (2) Petitioner committed an act which caused bodily injury to another, specifically, Mr. Rumph.  *See* Fla. Stat. § 782.051(1) (1996).  To prove the crime of shooting into a dwelling, the evidence must show the following elements beyond a reasonable doubt:  (1) Petitioner shot a

firearm, (2) he did so into a building, and (3) the shooting was done consciously and intentionally, with reckless indifference to consequences and with the knowledge that damage is likely to be done to some person, or it was done wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or the property of another person.  *See* Fla. Stat. §790.19 (1996).

Petitioner states that his claim of innocence is supported by the "newly discovered evidence" of Diandra Dawson's deposition testimony and Terrance McCrary's affidavit (*see* Doc. 1, supporting memorandum at 16).  He asserts that Ms. Dawson stated during a deposition that she never saw Petitioner fire a shot (*id*.).  Additionally, Mr. McCrary's affidavit states that he saw a black man wearing a Miami Dolphin's jacket (admittedly Petitioner (*see* Doc. 14, Ex. M at 94)) come out of an apartment after the victim, Barry Demons, had been shot (*see id.* at 7–9).  McCrary saw Petitioner squat next to the victim, pull a gun from his (Petitioner's) pants and place it near the victim, and then pick up the gun again (*id.* at 9).  Mr. McCrary stated that as soon as Petitioner stood up, someone "crashed" the window of the upstairs apartment, and he heard a gunshot at almost the same time (*id*.).  McCrary saw Petitioner take off running (*id*.).  Then a female came outside screaming for help, and another man came out of the apartment, and it appeared that the man had been shot (*id*.).

Petitioner raised a claim of newly discovered evidence based upon Mr. McCrary's affidavit in his third Rule 3.850 motion (*see* Doc. 14, Ex. M at 1–10).  At the evidentiary hearing conducted during the post-conviction proceedings, Petitioner admitted the following facts, either through his testimony or by acknowledging his sworn statements to a police investigator made after he had been advised of his <u>Miranda</u> rights:  (1) on the night of the shooting, he and co-defendant Brandon Dawson were looking to set up a drug deal, (2) he and Dawson armed themselves with guns, (3) he and Dawson went to the victim's (Mr. Demons) apartment and asked Demons to sell them one ounce of cocaine, (4) he (Petitioner) and Dawson conspired to purchase an ounce of cocaine, (5) Mr. Demons told them he had only $200 worth of cocaine, (6) Petitioner and Dawson each gave Mr. Demons $100 to purchase the cocaine, (7) Mr. Demons did not give them the cocaine, so they returned to Demons' apartment three hours later to get the money they had given him, (8) Petitioner entered the apartment with a gun in his waistband and demanded his money back, (9) Mr. Demons attempted to close the door after Petitioner as co-defendant Dawson attempted to force his way into the apartment, (10) Mr. Demons pushed Dawson out of the apartment, and the two men began pushing and punching each other, (11) meanwhile, Petitioner told a female occupant of the apartment to give him his money, (12) Petitioner looked around the apartment for Mr. Demons' pants, where Petitioner believed his money was, (13) during the course of the fight between Mr. Demons and co-defendant Dawson, Dawson shot and killed Mr. Demons, (14) Petitioner left the

apartment and saw Mr. Demons outside, and (15) Petitioner heard a crash, and he shot at the house, hitting Mr. Rumph (Doc. 14, Ex. T at 103–21). Petitioner testified, "When he [Mr. Rumph] crashed the window it was kind of like reflexes" (*id*. at 116). The State's attorney asked if the gun accidentally fired, and Petitioner responded, "No, I'm up under a rainfall or downpour of glass. So the gun was in my hand and the reflex . . . my reflexes pulled it" (*id*.). Also included in the state court record is the written plea agreement signed by Petitioner which stated that the factual basis for the plea was that Petitioner went to the victim's house "to get reimbursed for a small amount of drugs; a fight broke out with victim and co-defendant, Brandon Dawson, who shot victim [sic]; Defendant [while] fleeing the scene shot and wounded another man." (*id.* at 76, 99–101, 130–32). The record also contains a transcript of the plea colloquy during which Petitioner completely agreed with the factual basis set forth in the written plea agreement (*id*. at 76, 100–02, 133–47).

In light of the fact that neither Ms. Dawson's nor Mr. McCrary's statement contains facts that exculpate Petitioner of third degree murder with a firearm, felony causing bodily injury, or shooting into a building, and in consideration of Petitioner's admissions in his testimony during the post-conviction evidentiary hearing, in his statement to the investigator, in the written plea agreement, and during the plea colloquy, the undersigned concludes that Petitioner has failed to carry his burden of showing that it is more likely than not that no reasonable juror would have convicted him if Ms. Dawson's and Mr. McCrary's statements had been presented at a trial. Accordingly, Petitioner has not made a threshold showing of actual innocence to avoid a statute of limitations bar to the consideration of his petition.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.      That Respondent's motion to dismiss (Doc. 14) be **GRANTED**.

2.      That the petition for writ of habeas corpus (Doc. 1) be **DISMISSED** with prejudice as untimely.

At Pensacola, Florida, this 30<u>th</u> day of October 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

       **Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**